J-S43022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF: E.A.N., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.N., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 463 MDA 2019 |

Appeal from the Decree Entered February 22, 2019
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  81 Adoptions 2018

| | | |
|---|---|---|
| ADOPTION OF: S.N., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.N., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 464 MDA 2019 |

Appeal from the Decree Entered February 22, 2019
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  82 Adoptions 2018

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 23, 2019**

D.N. ("Father") appeals from the February 22, 2019 Decrees involuntarily terminating his parental rights to his daughters, E.N., born in April 2016, and S.N., born in June 2017 ("Children") pursuant to 23 Pa.C.S. § 2511(a) and (b).  Additionally, Father's counsel, Joseph L. Hitchings, Esquire,

_____

[*] Former Justice specially assigned to the Superior Court.

seeks to withdraw his representation of Father pursuant to **Anders v. California**, 386 U.S. 738 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992). After careful review, we grant counsel's Application for Leave to Withdraw as Counsel, and affirm the orphans' court's Decrees.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

The orphans' court set forth the procedural and factual history of this matter as follows:

> On January 16, 2017, [Cumberland County Children and Youth Services ("CYS" or "the Agency")] became involved with the family after it received a referral that Mother tested positive for cocaine, marijuana, methadone, phencyclidine, and benzodiazepines. She was pregnant with S.N. at the time. She lived with the unborn child's [F]ather and their nine-month[-]old daughter, E.N. After an adjudication hearing on February 13, 2017, E.N. was adjudicated dependent but remained in the custody of her parents.
>
> Father and Mother retained custody on the condition that they begin participation in drug and alcohol treatment. Father was to begin participating in the Cumberland-Perry Substance Use Disorder program on February 27, 2017, but he never followed through. On June 9, 2017, after providing positive drug tests, both parents admitted to using crack cocaine. They agreed to a safety plan for E.N. where she would reside in the custody of her maternal grandparents. The parents' visits were to be supervised.
>
> On June [ ], 2017, Mother gave birth to S.N. at home. The child was two months premature and required intensive care in the hospital. She also was born addicted to drugs. On July 13, 2017, she was discharged from the hospital. She was adjudicated dependent, and placed in a foster home. On that same date, E.N. was placed in the custody of her maternal grandparents due to the parents' inability to maintain sobriety.
>
> Father was unsuccessfully discharged from a drug treatment program on August 25, 2017. He scheduled another evaluation for September 5, 2017, but failed to appear for that appointment. By October 2, 2017, he had missed 11 drug screens. He completed a drug and alcohol evaluation on October 6, 2017. He

- 2 -

was again recommended for outpatient treatment. Again, he was unsuccessfully discharged for his failure to follow-through.

In early 2018, Father finally began to get his act together. On April 13, 2018, he successfully completed outpatient drug and alcohol treatment. By the time of the permanency review hearing on May 7, 2018, both Mother and Father were in compliance with their objectives and making substantial progress toward remedying the concerns which led to the children's dependency. After the hearing, E.N. was returned to the custody of her mother. She and the children went to reside with Father at the home of Mother's aunt.

By July of 2018, both parents began to slip again. They failed to bring S.N. to an eye appointment needed to manage a condition caused by her premature birth. The Agency received a referral that the parents had relapsed on cocaine and heroin. Both parents admitted to relapsing and using drugs while in the presence of the children. As a result, the Agency placed the children in the home of their maternal grandparents on July 18, 2018. All visitation with the parents was again to be supervised.

In August of 2018, Father stopped his drug and alcohol treatment. He set up another drug and alcohol evaluation but failed to show for the appointment. On October 5, 2018, Mother passed away from a drug overdose.

Mother's passing prompted Father to cooperate with his drug treatment. He began submitting to random testing and providing negative screens. However, his cooperation was short [-]lived. He was unsuccessfully discharged from drug and alcohol treatment on December 18, 2018.

Orphans' Court Opinion, 5/8/19, at 1-3 (footnotes omitted).

On January 7, 2019, CYS filed Petitions to involuntarily terminate Father's parental rights. The court appointed both a guardian ad litem and legal counsel for Children.

On February 22, 2019, the court conducted an evidentiary hearing on the Petitions. At the hearing, CYS presented the testimony of Megan Wolfe, the CYS caseworker, as well as B.C., Children's maternal grandfather. Father testified on his own behalf.

On February 22, 2019, the court entered Decrees involuntarily terminating Father's parental rights to Children. Thereafter, Father timely filed Notices of Appeal and Concise Statements of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b),[1] contending the trial court erred in involuntarily terminating his parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b).

**Counsel's Application to Withdraw**

On June 10, 2019, Father's counsel filed an Application to Withdraw as Counsel and an **Anders** brief. When presented with an **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel under **Anders**, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in **Santiago.**[2] In addition, Counsel must provide a copy of the **Anders** brief to the client with a letter stating that he or she may retain new counsel, proceed *pro se*, or raise any

---

[1] On April 3, 2019, this Court, acting *sua sponte*, consolidated the appeals.

[2] These requirements include: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous. **Santiago**, 978 A.2d at 361.

additional issues not raised by counsel in the ***Anders*** brief. ***Commonwealth v. Orellana***, 86 A.3d 877, 879-80 (Pa. Super. 2014).

Here, Father's counsel has complied with all of the requirements of ***Anders/Santiago***. We thus proceed to the merits of the issues raised in the ***Anders*** brief.

**Legal Analysis**

In reviewing cases in which the trial court involuntarily terminated parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the orphans' court made an error of law or abused its discretion. ***Id***. Where the competent record evidence supports the court's findings, we must affirm the orphans' court even though the record could support an opposite result. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). Appellate courts defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings." ***In re T.S.M.***, ***supra*** at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope

- 5 -

for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." ***In re Adoption of R.J.S.,*** 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires court to conduct a bifurcated analysis. See 23 Pa.C.S. §§2511(a) and (b). Courts first focus on the conduct of the parent, and if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, as provided in Section 2511(b). Courts particularly focus on the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007). A parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

While the orphans' court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(2), (5), and (b), we need only agree with its decision as to any one subsection of Section 2511(a), as well as

- 6 -

Section 2511(b), in order to affirm the termination of parental rights.  ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude that the orphans' court properly exercised its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2). Section 2511 (a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."  23 Pa.C.S. §2511(a)(2); ***In re Adoption of S.P.***, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).  The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.  ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002).  This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities.  ***Id.***  At a termination hearing, the orphans' court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the CYS agency or take advantage of available services during dependency proceedings. ***Id.*** at 340.

- 7 -

Here, Father asserts that CYS failed to present clear and convincing evidence that Father has a continuing incapacity to perform parental duties pursuant to 23 Pa.C.S. § 2511(a)(2). *Anders* Brief at 10-11. In its opinion, the orphans' court disagreed, summarizing Father's progress towards reunification as follows:

> At the time of the termination hearing on February 22, 2019, Father's compliance with the permanency plan was minimal. He had not met his parenting objective; he had not been cooperating with the Agency; he had failed to maintain appropriate and stable housing; he had failed to remain drug free; and he had failed to maintain his relationship with his daughters. Consequently, we found by clear and convincing evidence that grounds existed for the termination of his parental rights to E.N. and S.N.

Orphans' Court Opinion, 5/8/19, at 3.

Additionally, the orphans' court credited testimony that Father's lengthy history of drug addiction caused Children to experience "instability and unrest for the majority of their young lives. . . ." *Id.* at 5. The court found that Children lacked essential parental care for nearly two years at the time of the termination hearing, and that Father's addiction was the source of his repeated and continued parental incapacity. *Id.* at 6. Further, the court concluded that Father could not remedy his incapacity. *Id.*

Having reviewed the record, we conclude that it supports the findings of the orphans' court that Father has not provided Children with the essential parental care, control and subsistence necessary for their mental and physical well-being, and that Father is unable to remedy the causes of his parental

incapacity, neglect or refusal any time in the foreseeable future. Thus, Father is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

We also conclude that, pursuant to Section 2511(b), the orphans' court properly determined that termination of Father's parental rights would be in the best interests of Children. With respect to Section 2511(b), we consider whether termination of parental rights will best serve Children's developmental, physical, and emotional needs and welfare. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.*

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. *In re Z.P.*, *supra* at 1121. The orphans' court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

Father argues the orphans' court erred in its analysis of Children's needs and welfare because the court failed to assess the impact of severing the bond between Children and Father. *Anders* Brief at 11-12. In terminating Father's

- 9 -

parental rights, however, the orphans' court did, in fact, consider the bond between Father and Children, and found little to no evidence that severing the bond between Father and Children would have any detrimental effect on Children. Orphans' Court Opinion, 5/8/19, at 7. The court observed that Children have spent the majority of their lives with their maternal grandparents, and credited testimony that Children are thriving with their maternal grandparents, who provide Children with love, stability, and permanency, and wish to adopt Children. ***Id.*** The court concluded that "the needs and welfare of [Children] would be best served by terminating Father's parental rights and allowing them to be adopted by their maternal grandparents." ***Id.***

Our review of the record supports the orphans' court's findings. We do not discern an error of law or abuse of discretion with respect to the orphans' court's conclusion, and thus affirm the court's determination that involuntary termination of Father's parental rights is in the best interests of Children.

Furthermore, our independent review of the record, conducted in accordance with ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018), confirms counsel's assertion that there are no issues of merit to be considered by this Court and this appeal is, thus, wholly frivolous. Accordingly, we grant counsel's Application to Withdraw and affirm the Decrees involuntarily terminating Father's parental rights.

Counsel's Application to Withdraw granted.  Decrees affirmed**.**

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/23/2019</u>